UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JOHN P. DASH III,

Plaintiff,

v.

MOVEMENT MORTGAGE, LLC &
ROUNDPOINT MORTGAGE SERVICING
CORPORATION,

Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-8860-SJB-ST

**BULSARA, United States District Judge:**

Plaintiff John P. Dash III filed this pro se action against Movement Mortgage, LLC ("Movement") and Roundpoint Mortgage Servicing Corporation ("Roundpoint"). (Compl. dated Dec. 20, 2024, Dkt. No. 1). His Amended Complaint asserts claims for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and New York General Business Law ("GBL") § 349, and for breach of fiduciary duty, conversion, breach of contract and the implied covenant of good faith and fair dealing, unjust enrichment, and intentional infliction of emotional distress. (Am. Compl. dated Aug. 14, 2025, Dkt. No. 38 ¶¶ 45–76). Movement and Roundpoint have moved to dismiss the Amended Complaint. (Movement's Mot. to Dismiss dated Dec. 23, 2025 ("Movement's Mot."), Dkt. No. 69-5; Roundpoint's Mot. to Dismiss dated Dec. 23, 2025 ("Roundpoint's Mot."), Dkt. No. 69-2). For the reasons explained below, Dash's RESPA and TILA claims are dismissed, and the Court declines to exercise supplemental jurisdiction over his state law claims.

STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among

plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

For the purpose of this motion, the Court is "required to treat" the Plaintiff's "factual allegations as true, drawing all reasonable inferences in favor of [Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

Because Dash is proceeding pro se, the Court construes his Amended Complaint "to raise the strongest claims [it] suggest[s]." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024). However, his pro se status does not permit the Court to read into his "submissions claims that are not consistent with [his] allegations, or arguments that the submissions themselves do not suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quotation omitted).

In addition to the Amended Complaint, the Court considers documents that are incorporated by reference, documents that are integral to the pleading, and documents of which the Court may take judicial notice. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). In moving to dismiss, Defendants attach a number of documents, including Dash's mortgage, his written requests, their respective responses, and mailings sent to Dash prior to his requests that reflect their designated addresses for QWRs. (*See* Decl. of Ali Degan in Supp. of Roundpoint's Mot. ("Degan Decl."), Dkt. No.

69-1 ¶¶ 2–4; Decl. of Joshua Keefe in Supp. of Movement's Mot., Dkt. No. 72 ¶¶ 3–5, 11). Defendants contend all of these documents are integral to Dash's Complaint and therefore may be considered in deciding the motions to dismiss. (*See* Movement's Mot. at 6 n.1, 7 n.2; Roundpoint's Reply in Supp. of Mot. to Dismiss dated Feb. 6, 2026 ("Roundpoint's Reply"), Dkt. No. 69-7 at 3 n.1).

The Court agrees that Dash's written requests are integral to and incorporated by reference in his Amended Complaint, (*see* Am. Compl. ¶¶ 18–23, 42), and that Roundpoint's December 19, 2024 response to Dash's request is incorporated by reference, (*see id.* ¶¶ 37, 43). Dash relies heavily on the requests he sent to Movement and Roundpoint in the Amended Complaint, and they provide the foundation for his RESPA and TILA claims. (*See id.* ¶¶ 18–23, 42–50). And he specifically references Roundpoint's letter dated December 19, 2024, stating that Roundpoint "admitted in writing on December 19, 2024, that it was 'unable to provide documentation regarding the escrow reconciliation request made with the prior servicer on January 8, 2024,'" (*id.* ¶ 37), and that "Roundpoint's response dated December 19, 2024: a. Failed to provide required documentation; b. Admitted missing servicing records; c. Failed to address the tax reduction issue; d. Failed to justify late fee assessments; [and] e. Violated RESPA and TILA response requirements," (*id.* ¶ 43). Accordingly, the Court considers these documents in deciding the motions to dismiss. *See e.g.*, *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985, 2020 WL 5848619, at *1 n.2 (E.D.N.Y. Sep. 30, 2020) ("Plaintiffs' claims are predicated on the mortgages, notes, and communications between Plaintiffs and Defendants, and the Amended Complaint cites to those documents extensively.

The Court therefore considers those documents . . . incorporated into and integral to the Amended Complaint.").

However, Movement's response to Dash's inquiry is neither integral to nor incorporated by reference in the Amended Complaint. "A document may only be considered 'integral' to a complaint in a narrow set of circumstances, where the plaintiff relies heavily on the document's terms and effect in pleading his claims and there is no serious dispute as to the document's authenticity." *K.W. ex rel. K.A. v. City of New York*, 177 F.4th 127, 137 n.5 (2d Cir. 2026) (quotation omitted). In his Amended Complaint, Dash plainly alleges that Movement never responded to his inquiry at all. (Am. Compl. ¶¶ 19–22). Because Dash does not rely on Movement's response, it cannot be considered integral to his Amended Complaint, and the Court does not consider it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.").[1]

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Dash has a mortgage on his primary residence located at 121 Brighton Way, Merrick, New York 11566. (Am. Compl. ¶ 9). His mortgage was serviced by Movement from October 2021 until March 31, 2024. (*Id.* ¶ 10). On April 1, 2024, Roundpoint began servicing his mortgage. (*Id.* ¶ 11).

[1] The Court also does not rely upon Dash's mortgage, or the mailings Movement sent Dash prior to his January 2024 inquiry in deciding the motions.

At some point, Dash successfully grieved his real estate taxes, resulting in an approximately $ 6,000 reduction in tax liability. (*Id.* ¶ 13). However, despite this reduction in his tax obligations, Movement and Roundpoint did not adjust his monthly mortgage payment to reflect the reduced escrow requirement for property taxes. (*Id.* ¶ 14). Dash alleges this failure resulted in excessive monthly payment requirements, and that the monthly statements provided by Movement and Roundpoint "failed to accurately disclose the escrow account status, overpayment amount, and Plaintiff's right to a refund." (*Id.* ¶¶ 16–17).

On January 8, 2024, Dash submitted a request for escrow reconciliation to Movement. (Am. Compl. ¶ 18). Although Dash initially alleged Movement failed to respond to his request, (*id.* ¶ 19), he now concedes that Movement acknowledged his inquiry on January 9, 2024 and stated it would conduct an off-cycle escrow analysis, (Pl.'s Opp'n to Defs.' Mots. to Dismiss dated Jan. 14, 2026 ("Pl.'s Opp'n"), Dkt. No. 69-6 at 5). And on January 22, 2024, Movement sent him the results of the escrow analysis, stated that adjustments would be made, and sent him an escrow account disclosure statement and a refund check for $ 278.60. (*Id.* at 5–6).

Dash also alleges deficiencies relating to the transfer of his mortgage from Movement to Roundpoint for servicing. (Am. Compl. ¶¶ 36–41). Though Dash now concedes Movement properly responded to his request for an escrow reconciliation, (Pl.'s Opp'n at 7), the Amended Complaint alleges that Movement failed to process the request before his mortgage was transferred to Roundpoint, and failed to transfer information about his request to Roundpoint, (Am. Compl. ¶¶ 21–22). Dash alleges

Movement failed to properly transfer all servicing records to Roundpoint, and that Roundpoint failed to properly review and implement proper servicing based on transferred records. (*Id.* ¶¶ 36–37).

Ultimately, on November 8, 2024, Roundpoint issued Dash a refund check of $ 6,403.08 for escrow overpayment. (*Id.* ¶ 24). Roundpoint provided no documentation or explanation with the refund. (*Id.* ¶ 27). Prior to the issuance of the $ 6,403.08 refund, Movement assessed a late fee against Dash's account on March 18, 2024, and Roundpoint assessed late fees against Dash's account in June 2024, July 2024, and October 2024. (*Id.* ¶¶ 29–32). After issuing the escrow refund, Roundpoint assessed another late fee against Dash's account in December 2024. (*Id.* ¶ 33).

On November 15, 2024, Dash sent a written inquiry to Roundpoint regarding alleged servicing errors, and Roundpoint responded on December 19, 2024. (Am. Compl. ¶¶ 42–43). Dash mailed his inquiry to PO Box 19409, Charlotte, NC 28219-9409, (Dash's Nov. 15, 2024 Letter, attached to Degan Decl. as Ex. A, Dkt. No. 69-1 at 5),[2] and Roundpoint received it on November 19, 2024, (Roundpoint's Dec. 19, 2024 Letter & Enclosures, attached to Degan Decl. as Ex. B, Dkt. No. 69-1). Roundpoint's response indicated that it did not have documentation regarding the escrow reconciliation request made to Movement on January 8, 2024, but enclosed Movement's annual escrow account disclosure statement, which reflected an escrow surplus in the amount of $ 2,321.61. (Am. Compl. ¶ 37; Roundpoint's Dec. 19, 2024 Letter & Enclosures at 10).

---

[2] All citations to the Degan Declaration and accompanying exhibits refer to the page numbers assigned by the Electronic Case Filing system.

Roundpoint's response contained several enclosures, including copies of payment reminders previously sent to Dash in June 2024, July 2024, and October 2024—each of which contained a disclosure stating:

> To submit a RESPA Qualified Written Request ("QWR"), assert an error or request information about the servicing of your loan, you must use the designated address below. Please include your full name, your mortgage loan number, and the error you believe to have occurred or the information you are requesting about your mortgage account:
>
> RoundPoint Mortgage Servicing LLC
> PO Box 19789
> Charlotte, NC 28219-9409

(Roundpoint's Dec. 19, 2024 Letter & Enclosures at 15, 18, 21).

Dash asserts claims against Movement and Roundpoint for violations of RESPA, TILA, GBL § 349, breach of fiduciary duty, conversion, breach of contract and the implied covenant of good faith and fair dealing, unjust enrichment, and intentional infliction of emotional distress. (Am. Compl. ¶¶ 45–76). Movement and Roundpoint have moved to dismiss Dash's Amended Complaint in its entirety. (Movement's Mot. at 1–2; Roundpoint's Mot. at 5–7). For the reasons explained below, Dash's RESPA and TILA claims are dismissed, and the Court declines to exercise supplemental jurisdiction over Dash's state law claims.

## DISCUSSION

### I. RESPA

"RESPA is a consumer-protection statute, and it imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (citation omitted). A mortgage servicer's "duties under RESPA are triggered if it receives a qualified written request ('QWR'), defined as

correspondence that identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Id.* (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)). After receiving a QWR, a mortgage servicer "must respond with a written acknowledgement . . . within five business days of receipt, and, within thirty business days of receipt, the servicer must either take action with respect to the inquiry or provide an explanation for why it is not required to or cannot take such action." *Reinhart v. CitiMortgage, Inc.*, 677 F. App'x 17, 18 (2d Cir. 2017) (citing 12 U.S.C. § 2605(e)(1), (2)).

"RESPA's implementing regulations allow (but do not require) servicers to establish a designated address for QWRs." *Roth*, 756 F.3d at 181. "[I]f a servicer establishes a designated QWR address, 'then the borrower must deliver its request to that office in order for the inquiry to be a [QWR].'" *Id.* (quoting Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994)). "[F]ailure to send the [request] to the designated address . . . does not trigger the servicer's duties under RESPA." *Id.* at 182 (quoting *Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1148–49 (10th Cir. 2013)). "As long as a servicer complies with the notice requirements . . . for designating a QWR address, a letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter." *Id.*

As for Movement, the Court need not decide whether Dash's request to Movement is a proper QWR. Regardless of whether Dash's inquiry is a QWR, Dash

conceded in his opposition that Movement's response to his request "satisfies RESPA's substantive requirements." (Pl.'s Opp'n at 7). He concedes that Movement acknowledged his inquiry on January 9, 2024, conducted an off-cycle escrow analysis in response, and sent him the results with an explanation of adjustments that would be made to his account on January 22, 2024, along with an escrow account disclosure statement and a refund check. (*Id.* at 5–6). As Dash concedes, this is "precisely the type of comprehensive response RESPA requires." (*Id.* at 6). Because Dash has conceded that Movement's response to his inquiry satisfied RESPA's requirements, his RESPA claim against Movement is dismissed.

As for Roundpoint, Dash alleges that he "submitted a written inquiry regarding the servicing errors, constituting . . . a RESPA information request" on November 15, 2024. (Am. Compl. ¶ 42). He alleges that Roundpoint's December 19, 2024 response to his QWR was deficient, and violated RESPA. (*Id.* ¶ 43). As an initial matter, Dash does not attach his inquiry to the Amended Complaint, nor plead any specific facts about where he sent it. Nonetheless, Roundpoint has submitted Dash's inquiry and its response in connection with its motion to dismiss. (*See* Dash's Nov. 15, 2024 Letter; Roundpoint's Dec. 19, 2024 Letter & Enclosures). Because these documents are incorporated by reference into the Complaint, *see supra* p. 4, the Court considers them, and concludes Dash's written request is not a QWR, and is therefore insufficient to trigger duties under RESPA. As reflected in Roundpoint's December 19, 2024 response to Dash's inquiry, Roundpoint's address for QWRs is PO Box 19789, Charlotte, NC 28219-9409. (Roundpoint's Dec. 19, 2024 Letter & Enclosures at 12). Roundpoint's

December 19 Letter also contained enclosures, including copies of payment reminders dated June 18, 2024, July 18, 2024, and October 18, 2024—each of which contained the same disclosure providing that an individual "must use the designated address"— "PO Box 19789, Charlotte, NC 28219-9409"—"[t]o submit a RESPA . . . [QWR], assert an error or request information about the servicing of [their] loan." (*See id.* at 10–21). Dash does not dispute that he received these payment reminders—which gave him notice of Roundpoint's designated address for QWRs—when they were initially sent in June, July, and October—before he sent his inquiry in November. Nor does Dash dispute that he sent his correspondence to the wrong address—he sent his letter to PO Box 19409, Charlotte, NC 28219-9409, which is not Roundpoint's designated address for QWRs. (Dash's Nov. 15, 2024 Letter at 5). Instead, he contends Roundpoint's argument that he sent his correspondence to the wrong address is merely "a technical objection that should not defeat [his] substantive claims." (Pl.'s Opp'n at 8). These arguments are meritless—the law is clear that when "a mortgage servicer designates a specific address for receipt of QWRs . . . the borrower must deliver its request to that office in order for the inquiry to be a [QWR]" and if a borrower fails to do so, the request "does not trigger the servicer's duties under RESPA." *Mack v. ResCap Borrower Claims Tr.*, 678 F. App'x 10, 14–15 (2d Cir. 2017) (quotation omitted); *see also Roth*, 756 F.3d at 181–82.[3] Because Dash did not send his request to the address designated by Roundpoint for QWRs, he fails to state a claim against Roundpoint under RESPA. *See Mack*, 678 F. App'x at 15

---

[3] The fact that Roundpoint responded to Dash's inquiry does not waive its ability to argue that Dash's inquiry was not a proper QWR. *See Roth*, 756 F.3d at 182.

(applying *Roth* and concluding that plaintiffs failed to trigger RESPA where they "sent their letter to the 'General Inquiries' address instead of the address established by [the servicer] for the receipt of QWRs"); *Roth,* 756 F.3d at 182 (affirming dismissal of RESPA claims where plaintiff did "not dispute that each of her mortgage statements from CitiMortgage designated a QWR address, or that her lawyer failed to use these addresses").[4] Accordingly, Dash's RESPA claims are dismissed.

**II. TILA**

TILA "was enacted to protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of credit terms." *Ryder v. J.P. Morgan Chase Bank*, 767 F. App'x 29, 31 (2d Cir. 2019) (quotation omitted); *see also* 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."). TILA generally requires that lenders "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Ryder*, 767 F. App'x at 31 (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)).

[4] To the extent Dash's papers may be read to assert a claim under 12 C.F.R. § 1024.35 on the theory that he satisfied the requirements for a "notice of error" even if he did not satisfy the requirements for a QWR, this argument also fails. Roundpoint required borrowers to use the same address to "assert an error" as to submit a QWR, (Roundpoint's Dec. 19, 2024 Letter & Enclosures at 15, 18, 21), and as explained, Dash did not send his correspondence to that address.

"TILA provides for civil liability only against creditors and certain assignees[.]" *Rowe v. Cenlar FSB*, No. 22-1870, 2023 WL 6873092, at *2 (2d Cir. Oct. 18, 2023) (citing 15 U.S.C. § 1640). "A creditor is the entity to whom the debt is payable." *Id.* (citing 15 U.S.C. § 1602(g)); *see also Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (explaining that "creditor" under TILA applies "to only '[a] person . . . to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract'" (quoting 12 C.F.R. § 226.2(a)(17)(i))). "A loan servicer is not a 'creditor' under the TILA unless it is also an owner or assignee of the loan." *Rowe*, 2023 WL 6873092, at *2.

Dash repackages his RESPA claim as a TILA claim in conclusory fashion,[5] alleging that Movement and Roundpoint violated TILA by "a. Failing to provide accurate periodic statements regarding escrow account status; b. Failing to properly acknowledge and investigate error resolution requests; c. Failing to provide adequate servicing transfer disclosures; d. Failing to correct errors within required timeframes; e. Failing to provide required documentation with escrow refund; [and] f. Misrepresenting account status on monthly statements." (Am. Compl. ¶ 50). Dash does not explain in any way how these alleged nondisclosures implicate TILA.

But the reason he cannot bridge that pleading gap is because Dash also fails to allege any facts to suggest that Movement and Roundpoint are "creditors." Movement and Roundpoint are mortgage servicers—the only way they can be held liable under

[5] Movement argues that Dash's TILA claims against it are time barred, (Movement's Mot. at 13–14), which Dash concedes, (Pl.'s Opp'n at 7).

TILA is if they are "also an owner or assignee" of Dash's mortgage loan. *See Rowe*, 2023 WL 6873092, at *2. Dash has not alleged that Movement or Roundpoint was ever the "owner" or "assignee" of his mortgage loan; he only alleges that they serviced his mortgage loan. (*See* Am. Compl. ¶¶ 10–11). These allegations are insufficient to establish that either Movement or Roundpoint was a "creditor" under TILA. *See Rowe*, 2023 WL 6873092, at *2 (affirming dismissal of TILA claims against mortgage servicers where plaintiff did "not plausibly allege that either defendant was an owner or assignee of the loan"); *e.g.*, *Izmirligil v. Select Portfolio Servicing, Inc.*, No. 17-CV-6157, 2020 WL 1941192, at *9 (E.D.N.Y. Apr. 22, 2020) (dismissing TILA claim where plaintiff "provide[d] no factual allegations to support a finding that SPS, a mortgage servicer, [was] a creditor as defined by TILA"); *Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013) ("[P]laintiff has proffered no evidence that [the mortgage servicer] ever was the owner of plaintiff's debt. Thus, he may not maintain TILA claims against [the mortgage servicer]."). Accordingly, Dash fails to state a TILA claim against either defendant and the claim is dismissed.

**III. State Law Claims**

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). The Court has dismissed all of Dash's federal claims, and there is no other basis for original jurisdiction. Although the parties appear to be diverse, (*see* Am. Compl. ¶¶ 5–7), Dash's Amended Complaint does not meet the amount in controversy requirement to invoke

the Court's diversity jurisdiction. "Diversity jurisdiction requires . . . a 'reasonable probability' that the amount in controversy exceeds $75,000." *Smulley v. Safeco Ins. Co. of Ill.*, No. 21-2124, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)); *see* 28 U.S.C. § 1332(a).

Dash seeks "[a]ctual damages in an amount to be proven at trial, including but not limited to $6,403.08 in escrow overcharges, $261.10 in improper late fees, lost use of funds, and other monetary damages," "[s]tatutory damages under RESPA for each violation,"[6] "[s]tatutory damages under TILA up to $4,000," "[s]tatutory damages under N.Y. Gen. Bus. Law § 349 up to $ 1,000," "[t]reble damages for willful violations of N.Y. Gen. Bus. Law § 349," "[p]unitive damages in an amount sufficient to punish Defendants and deter similar conduct," and "restitution and disgorgement of ill-gotten gains." (Am. Compl. at 8–9).[7] Even reading Dash's asserted damages liberally, including damages for claims the Court has dismissed, *see Banga v. Lustig*, No. 24-0140, 2025 WL 1983460, at *3 (2d Cir. July 17, 2025), Dash's actual damages demand totals approximately $ 18,000—falling far short of the $ 75,000 requirement.

Thus, "[t]he only remaining way that [Dash] could satisfy the $75,000 amount-in-controversy jurisdictional threshold is if his complaint stated a claim warranting

---

[6] RESPA provides that an individual borrower may recover additional damages not to exceed $ 2,000 against any defendant who fails to comply with RESPA "in the case of a pattern or practice of noncompliance." *See* 12 U.S.C. § 2605(f)(1)(B).

[7] Dash also seeks attorney's fees, (Am. Compl. at 9), but because Dash is proceeding pro se, he is not entitled to attorney's fees, *see Warren v. Colvin*, 744 F.3d 841, 845 n.5 (2d Cir. 2014) ("As a *pro se* litigant, Warren has not incurred any attorney's fees and is not eligible to recover any imputed fees.").

punitive damages." *See Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 120 (2d Cir. 2019). But "'a claim for punitive damages is to be given closer scrutiny . . . than a claim for actual damages' when calculating a jurisdictional amount." *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 54 (2d Cir. 2018) (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972)). Dash's punitive damages allegation does not survive such closer scrutiny.

Under New York law,[8] "[p]unitive damages are permitted when the defendant's wrongdoing is not simply intentional but evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007) (quotation omitted). "The misconduct must be exceptional, as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness . . . or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights." *Id.* (quotation omitted). Because the "purpose [of punitive damages] is not to remedy private wrongs but to

---

[8] Punitive damages are only available on Dash's New York common law claims. RESPA and TILA do not provide for punitive damages. *See Volovnik v. Benzel-Busch Motor Car Corp.*, No. 09-CV-10595, 2010 WL 3629819, at *9 (S.D.N.Y. July 29, 2010) ("TILA is remedial in nature, and as such, damages for TILA violations are expressly limited by statute to: (1) actual damages; (2) costs; (3) statutory damages; and (4) reasonable attorney's fees."), *report and recommendation adopted*, 2010 WL 3629815 (Sep. 16, 2010); *Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461, 470 (M.D. Pa. 2009) ("A review of RESPA reveals that punitive damages are not authorized by the statute. Only sections 2605, 2607 and 2608 of RESPA contain private rights of action, and none of these authorize punitive damages."). And "punitive damages for [GBL] section 349(h) claims are limited to the treble damages provided by the statute." *Hobish v. AXA Equitable Life Ins. Co.*, 43 N.Y.3d 442, 455 (2025).

vindicate public rights . . . a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Rocanova v. Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 613 (1994) (citation omitted).

Dash pleads no facts suggesting that Movement and Roundpoint's conduct was part of a pattern directed at the public generally, nor does he allege that Movement and Roundpoint's conduct reflected a high degree of moral turpitude or a willful or wanton disregard of his rights. Because Dash has pled no facts that would give rise to punitive damages under New York law, he cannot rely upon them to satisfy the amount in controversy requirement. *See Smulley*, 2022 WL 16753118, at *1 ("Only 'if punitive damages are permitted under the controlling law' are they includable in the calculation of the amount in controversy." (quoting *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991)); *e.g.*, *Shipman v. Charles Schwab & Co.*, No. 14-CV-4568, 2016 WL 11472831, at *7 (E.D.N.Y. Aug. 11, 2016) (finding plaintiff failed to satisfy amount in controversy requirement where the plaintiff "simply d[id] not allege any exemplary misconduct by defendants," and therefore "[e]ven construing the pleadings beyond broadly, [plaintiff] [did] not credibly much less adequately plead[ ] a basis for punitive damages").

Having concluded there is no basis for original jurisdiction, the Court declines to exercise supplemental jurisdiction over Dash's state law claims. *Kolari,* 455 F.3d at 122 ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims." (quotations omitted)); *Sadallah v. City of Utica*, 383 F.3d 34, 40 (2d Cir. 2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court."). Dash's state law claims are therefore dismissed without prejudice. *Kolari*, 455 F.3d at 124.[9]

* * *

In reviewing Dash's opposition, the Court was unable to locate some of the authorities cited, and many of the authorities cited do not stand for the proposition Dash relies upon them for. Dash is warned that if he files another paper with this Court containing non-existent or fabricated citations, the filing will be struck and additional sanctions, as appropriate, imposed.

## CONCLUSION

For the reasons explained above, Dash's RESPA and TILA claims are dismissed. Because repleading cannot cure the defects identified, the dismissal is with prejudice and leave to amend is denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."). The Court declines to exercise

---

[9] The Court declines to entertain Dash's requests for sanctions made in his opposition brief. (*See* Pl.'s Opp'n at 10). Dash has already moved for sanctions three times, (*see* Pl.'s Mot. to Compel & for Sanctions filed Sep. 11, 2025, Dkt. No. 45; Pl.'s Mot. to Compel & for Sanctions filed Sep. 11, 2025, Dkt. No. 46; Pl.'s Mot. for Sanctions filed Dec. 10, 2025, Dkt. No. 60), and his motions were denied by Judge Tiscione, (Min. Order dated Jan. 7, 2026, Dkt. No. 66). To the extent Dash alleges that Movement and Roundpoint's motions to dismiss violated this Court's order, (Pl.'s Opp'n at 2–3), Dash misapprehends the Court's order. Though the Court precluded Defendants from arguing that "Dash failed to plead damages under RESPA," (*see* Order dated Nov. 11, 2025), it did not categorically prohibit them from attacking Dash's RESPA claim.

supplemental jurisdiction over Dash's state law claims, which are dismissed without prejudice. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: September 10, 2026
Central Islip, New York